NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KAREN DUKES** <br><br> **Plaintiff,** <br><br> v. <br><br> **LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, et al.,** <br><br> **Defendants.** | **Civil Action No. 14-cv-00806** <br><br><br> **OPINION** |

JOSE L. LINARES, U.S.D.J.

This matter comes before the Court upon cross motions for summary judgment. Plaintiff Karen Dukes ("Plaintiff") moved for summary judgment on February 20, 2015. (ECF Nos. 14 and 15). On the same day, Defendants Liberty Life Assurance Company of Boston and Wells Fargo & Company Group Disability Policy ("Defendants"), also moved for summary judgment. (ECF No. 16). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. Upon consideration of the Parties' submissions, and for the reasons stated below, Plaintiff's Amended Motion for Summary Judgment, (ECF No.15), is **DENIED**, and Defendants' Motion for Summary Judgment, (ECF No. 16), is **GRANTED**.

## I.    STATEMENT OF UNDISPUTED FACTS

Defendant Liberty Life Assurance Company of Boston ("Liberty") provides claim administrative services and acts as the insurer of benefits for a Group Disability Income Policy (LTD Policy) sponsored by Wells Fargo & Company. (Defendants' Statement of Undisputed Material Facts ("SOUF"), ECF No. 16-2, ¶ 1). Plaintiff was employed as a Service Manager 1

for Wells Fargo & Company from December 21, 2010 until April 26, 2012. (*Id.* ¶ 5). Plaintiff's job description states that her position required "seldom" lifting of up to ten pounds for thirty minutes or less within an eight hour workday. (*Id.* ¶ 8).

Plaintiff left her employment on April 26, 2012 and began receiving short term disability benefits. (*Id.* ¶ 9). Plaintiff eventually exhausted short-term disability benefits and applied for long-term disability (LTD) benefits. (*Id.* ¶ 10). Liberty reviewed records from Plaintiff's various physicians and treatment providers, and found evidence of degenerative disc disease and multilevel facet arthropathy. (*Id.* ¶¶ 11-15). Liberty asked each medical provider to complete a restrictions form. (*Id.* ¶ 20). Liberty referred Plaintiff's file to Raymond J. Chagnon, M.D. (*Id.* ¶ 30). Dr. Chagnon reviewed Plaintiff's medical records, contacted Plaintiff's physicians for peer-to-peer discussions, and furnished Liberty with a report on October 12, 2012. (*Id.* ¶ 31). Dr. Chagnon concluded that Plaintiff had lower back pain and radiation to her left leg, and that she had restrictions which would last three months. (*Id.* ¶ 37). On October 16, 2012, following a review of Plaintiff's claim documentation, Liberty determined that Plaintiff was eligible to received LTD benefits, effective that day. (*Id.* ¶ 40). Liberty advised Plaintiff that her claim would be reviewed periodically to determine ongoing eligibility. (*Id.* ¶ 41).

In February 2013, Dr. Chagnon reviewed additional medical records and contacted Plaintiff's treatment providers again. (*Id.* ¶¶ 43-44). Based on his new findings, Dr. Chagnon reiterated the restrictions and limitations he had previously recommended, but also concluded that Plaintiff could return to full-time work within those restrictions. (*Id.* ¶¶ 54-55). Based on Dr. Chagnon's report and all other relevant information, Liberty sent Plaintiff a letter on February 22, 2013 to notify her that her LTD benefits would be discontinued because she was no longer "disabled." (*Id.* ¶ 56). Liberty concluded that the Plaintiff had not produced evidence

that she was precluded from performing the "Material and Substantial Duties" of her "Own Occupation." (*Id.* ¶ 57). Liberty notified Plaintiff of her right to appeal its decision. (*Id.* ¶ 58).

Plaintiff, through counsel, formally appealed Liberty's determination on August 16, 2013. (*Id.* ¶ 59). Plaintiff argued that she suffered from "unrelenting back pain, which prevents her from walking, standing, and sitting for [any] long-term period time," and that this condition prevented her from performing her occupation. (*Id.* ¶¶ 60-61). Plaintiff's appeal mainly relied on two documents: a report from Dr. Daniel I. Richman, M.D., and a letter from Dr. Michael Coppola. (*Id.* ¶ 63). Dr. Richman determined that Plaintiff "cannot perform any type of employment that would require her to sit for any period of time, move around or stand for any period of time in particular to lift heavy objects <u>i.e.</u> more than 10 or 15 pounds where she would have to bend at the waist." (*Id.* ¶ 66). Dr. Coppola, her chiropractor, stated that she was totally disabled. (*Id.* ¶ 70). Plaintiff's appeal was referred to an independent physician, Dr. Jamie L. Lewis, for review. (*Id.* ¶ 74). Dr. Lewis reviewed Plaintiff's medical records, Plaintiff's job description, and Liberty's Occupational Analysis, and concluded that Plaintiff could perform her own occupation in a full-time capacity with appropriate restrictions and limitations. (*Id.* ¶¶ 76-77). On October 28, 2013, Liberty upheld its decision to deny benefits after completing a thorough review of Plaintiff's entire claim file. (*Id.* ¶ 80).

In light of the foregoing, Plaintiff commenced this action on February 7, 2014. (ECF No. 1). This Court's jurisdiction is premised on federal question, 28 U.S.C. § 1331, as Plaintiff's claim arises from the Employee Retirement Security Act of 1974 ("ERISA"). (Cmp., ¶ 14). Both Parties moved for summary judgment on February 20, 2015 (ECF Nos. 15 and 16).

## II.    LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson,* 477 U.S. at 242-43 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## III.   DISCUSSION

### A. Plaintiff's Amended Motion for Summary Judgment

Plaintiff seeks summary judgment primarily because Liberty's decision to terminate Plaintiff's LTD benefits was "arbitrary and capricious." (Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Brief"), ECF No. 15-1, at 19). Plaintiff first argues that Liberty's decision was arbitrary and capricious because there was a structural conflict of interest given Liberty was "the sole adjudicator of all claims, as well as the sole payor of all benefits which might be due and owing to Plaintiff." (*Id.* at 21). Plaintiff also argues that Liberty's decision was arbitrary and capricious because Liberty "employed self-serving

selectivity in the use of evidence, relied on self-serving paper reviews, and relied on the opinions of non-treating physicians without adequate explanation . . . ." (*Id.* at 24).

## B. Defendants' Motion for Summary Judgment

Defendants seek summary judgment on similar grounds as the Plaintiff, focusing on the standard of review and arguing that Liberty's decision was not arbitrary and capricious. (Defendant's Memorandum of Law in Support of their Motion for Summary Judgment ("Defs.' Brief"), ECF No. 16-1, at 11). First, Defendants argue that Liberty's decision to terminate LTD benefits was not arbitrary and capricious because the "determination concerning Plaintiff's LTD claim was both reasonable and the result of a well-documented and procedurally fair review." (*Id.* at 13). Next, Defendants argue that "[P]laintiff has neither alleged nor adduced any evidence whatsoever that Liberty's decision was the result of bias or was tainted by any conflict of interest." (*Id*). Finally, Defendants argue that Plaintiff's claims that she now suffers from additional medical issues are inappropriate, as "the sole question for this Court is whether Liberty reasonably concluded, based upon the administrative record before it, that plaintiff had not met her burden of proving she was Disabled, as that term is defined under the LTD Policy, during the administrative review period." (*Id.* at 14).

## C. Arbitrary and Capricious Standard

The Parties are in agreement that the correct legal standard to be applied to Liberty's decision to terminate Plaintiff's LTD benefits is whether the decision was "arbitrary and capricious." (Pl.'s Brief at 19; Defs.' Brief at 11). The Parties, however, disagree as to whether Liberty's decision making process meets this standard of review. The Third Circuit recently held that "[a]n administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. American Airlines, Inc.*, 632

F.3d 837, 844-845 (3d Cir. 2011) (citing *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993). An administrator's decision is supported by substantial evidence "if there is sufficient evidence for a reasonable person to agree with the decision." *Daniels v. Anchor Hocking Corp.*, 758 F. Supp. 326, 331 (W.D. Pa. 1991). The Court must look at a variety of factors when analyzing whether an ERISA decision was arbitrary and capricious, including procedural concerns about the decision making process and structural concerns about conflicts of interest, but the factors will vary and are "case-specific." *Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 526 (3d Circ. 2009) (citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008)). Finally, this scope of review is narrow, and "[r]eview under this standard requires the challenged decisions to remain intact unless it is not rational." *Lucash v. Strick Corp.*, 602 F. Supp 430, 434 (E.D. Pa 1984) (quoting *Federal Communications Commission v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 803, (1978)). Accordingly, "deference should be given to the lion's share of ERISA claims." *Shvartsman v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson*, No. 11-03643, 2012 WL 2118126, at *9 (D.N.J. June 11, 2012) (citing *Glenn*, 554 U.S. at 116-17) (discussing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989))).

### D. Conflict of Interest

Defendants concede that "a conflict of interest may arise where, as here, the plan administrator is responsible both for determining eligibility benefits and for paying those benefits out of its own funds," (Defs.' Brief at 12), but this is only one factor for the Court to review and is only important "where there is evidence that the benefits denial was motivated or affected by the administrator's conflict." *Glenn*, 554 U.S. at 120 (Roberts, C.J., concurring). This Court considered a factually analogous case just two years ago *in Vander-Leeuw v. First Unum Life*

*Ins. Co.*, No. Civ. A. 11-5685, 2013 WL 3479433, at *8 (D.N.J. July 9, 2013). In that case, Plaintiff contended that the administrator's discussions with a financial consulting team constituted a conflict of interest. *Id.* The existence of a potential conflict of interest was not enough to show the administrator's decision was arbitrary and capricious, however, as this Court ruled that "Plaintiff does not point to any evidence that [the administrator] sought or followed the advice of financial consultants. . . Therefore, under the facts of this case, the Court finds that conflict of interest is not a significant factor." *Id.* Similarly, in this case Plaintiff states "[t]here can be no dispute in this matter that Liberty Mutual was both the sole adjudicator of all claims, as well as the sole payor of all benefits which might be due and owing to Plaintiff. . . Here, this factor weighs in favor of granting Plaintiff's Motion for Summary judgment." (Pl.'s Brief at 21). Plaintiff merely points out the existence of a potential conflict of interest, but does not proffer any evidence that Liberty's decision to terminate Plaintiff's LTD benefits was influenced by this conflict or incentivized Liberty to deviate from their normal protocol. Accordingly, the Court finds that the potential conflict of interest is not a significant factor here.

**E. Liberty's Procedure for Terminating Plaintiff's LTD Benefits**

The second critical dispute at issue in this case is whether Liberty's review of Plaintiff's claim was procedurally proper. Plaintiff claims that "Liberty Mutual employed self-serving selectivity in the use of evidence, relied on self-serving paper reviews, and relied on the opinions of non-treating physicians over treating physicians without adequate explanation." (Pl.'s Brief at 24). Defendants respond that "Liberty's review of plaintiff's claim was well-documented, procedurally fair, and free of taint," and that "Liberty did not ignore the reports of plaintiff's treating physicians or her expert." (Defs.' Brief at 21). Both Parties acknowledge that an administrator is not required to afford controlling weight to a Patient's treating physicians, as set

out by the United States Supreme Court in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Plaintiff contends, however, that Liberty's decision was arbitrary and capricious because in that same case the United States Supreme Court also held that "[p]lan administrators, of course may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* Plaintiff relies on *Culley v. Liberty Life Assurance Co.*, 339 Fed.Appx. 240 (3d Cir. 2009), where the Third Circuit stated "[w]hile Liberty Mutual may freely rely on its consultants, without giving special deference to the views of treating physicians, neither may it turn a blind eye to faults in the evidence supporting its consultants' opinions." *Id.* at 245. In *Culley*, the administrator's consulting physician noted that he was missing some critical information that left him unable to render a clear opinion and a later review of the consulting physician's findings by a case manager found inconsistencies in his findings, yet Liberty stood by their termination of LTD Benefits. *Id.* at 244.

Notably, in the present case, Plaintiff cannot point to inconsistencies in the findings of Dr. Chagnon or Dr. Lewis, but mainly challenges Liberty's consultants based on the fact that "the consultants reported that the treating physicians allegedly made statements that are in direct conflict with their written statements." (Pl.'s Brief at 24). These purported discrepancies are do not rise to a level sufficient to cast doubt over the reasonableness of Liberty's decision, do not prove that Liberty's decision was made without reliable evidence, and do not show that Liberty's decision was incorrect as matter of law. Plaintiff may not agree with the findings of Liberty's experts, but the experts clearly considered the entire administrative record before them as required. As such, Liberty's decision was not arbitrary and capricious and cannot be overturned by this Court.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Amended Motion for Summary Judgment, (ECF No.15), is **DENIED**, and Defendants' Motion for Summary Judgment, (ECF No. 16), is **GRANTED**.  An appropriate Order accompanies this Opinion.

Date: ~~June~~ _7_ , 2015

Jose L. Linares
United States District Judge